**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**GREENWOOD DIVISION**

| | |
|---|---|
| GLORIA BRYSON AND BESSIE GIBSON, individually and on behalf of a class of others similarly situated, | Case No. 8:20-cv-1928-TMC |
| Plaintiffs, | Judge Timothy M. Cain |
| v. | |
| LIBERTY INSURANCE CORPORATION AND LM INSURANCE CORPORATION, | **MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS, OR IN THE ALTERNATIVE, TO CERTIFY A CONTROLLING QUESTION OF LAW TO THE SUPREME COURT OF SOUTH CAROLINA** |
| Defendants. | |

## I.  INTRODUCTION

Plaintiffs Gloria Bryson and Bessie Gibson claim that Defendants Liberty Insurance Corporation ("LIC") and LM Insurance Corporation ("LM") breached their homeowners' insurance policies by improperly calculating the actual cash value ("ACV") of their damaged property in paying their claims. Plaintiffs do not dispute that ACV is properly defined as the cost to repair or replace the property, less depreciation, but claim that Defendants should have based their depreciation calculation only on the cost of materials needed to repair the property, not on the entire cost of doing so. Defendants are entitled to judgment on the pleadings for multiple reasons.

First, the Complaint fails to allege any cognizable breach of contract. Plaintiffs' insurance policies provide replacement cost coverage for property damage after Plaintiffs repair or replace their damaged property. But unless and until Plaintiffs complete the repairs or replacement, the policies provide for payment of the actual cash value at the time of loss of the damaged property.

It is well-settled under South Carolina law that ACV is the total cost to repair or replace damaged property, less depreciation. And that is exactly how Defendants calculated Plaintiffs' ACV payment here.

Comparing what they contend are "traditional" methods of depreciation with contemporary ones, Plaintiffs claim that their policies somehow prohibit calculating depreciation using the full cost to repair or replace the damaged property, including the cost of labor. (Compl. ¶¶ 53-62). But Plaintiffs cite no policy provision or South Carolina law that imposes such a prohibition, and there is none. Moreover, Plaintiffs' theory ignores the fact that the policies insured their homes as a whole—not their component parts. The labor used in creating those properties added to their value, and the labor costs to repair the properties were properly included when calculating depreciation to arrive at Plaintiffs' respective ACV payments. Consequently, Plaintiffs' breach of contract claim fails as a matter of law. Additionally, since their declaratory judgment claim is premised on the alleged breach, it fails as a matter of law as well. Thus, Defendants are entitled to judgment on the pleadings.

In the alternative, if the Court determines that South Carolina law is unclear regarding the answer to this central question, Defendants request that the Court certify to the Supreme Court of South Carolina the question of whether depreciation of labor costs in calculating ACV is permissible under South Carolina law. Like many other states confronted with this question, the Supreme Court of South Carolina should be given the opportunity to provide an answer for insurance claims subject to South Carolina law. If Defendants' policies and S.C. Department of Insurance Bulletin 2014-08 require or permit insurers to depreciate the total cost of repair or replacement, as a plain reading demonstrates they do, then Plaintiffs' claims fail as a matter of law. Conversely, if the South Carolina Supreme Court were to disagree and hold instead, as

Plaintiffs claim, that the policies' language and DOI Bulletin 2014-08 apply only to the materials component of replacement cost, then the Court and parties will benefit from a clear resolution of a central merits question for this action. If South Carolina is to follow the minority rule, it should do so based upon a decision of South Carolina Supreme Court, not an *Erie* prediction. If the Court is uncertain of the answer to this threshold question, the best way for this Court to "secure the just, speedy, and inexpensive determination" of this putative class action is to certify the question of state law to the South Carolina Supreme Court pursuant to S.C. Judicial Department Court Rule 244. *See* Fed. R. Civ. P. 1.

## II.    STATEMENT OF FACTS

### A.    Relevant Terms of Plaintiffs' Policies

Plaintiff Bryson purchased an LIC insurance contract to insure her home. (Compl. ¶ 11). Plaintiff Gibson purchased an LM insurance contract to insure her home. (Compl. ¶ 32). Both their policies provide:

> If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:
>
> > (a) The actual cash value of that part of the building damaged; or
> > (b) That proportion of the cost to repair or replace, after application of deductible and without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

(Answer, Exs. A and B, Section I – Conditions, Part 3(b)(1), (2)). The policies clarify, "We will pay no more than the actual cash value of the damage until actual repair or replacement is complete." (*Id.*, Section I – Conditions, Part 3(b)(4)). Actual cash value is undefined in the policies. The policies further state:

3

> You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage to buildings on an actual cash value basis. You may then make claim within 180 days after loss for any additional liability according to the provisions of this Condition 3. Loss Settlement.

(*Id.*, Section I – Conditions, Part (3)(b)(5)).

These provisions make clear that ACV is the replacement cost of damaged property, less depreciation, while RCV is the replacement cost without any depreciation. This is consistent with the common law definition of ACV. *Harrison v. Phoenix Assur. Co.*, 120 S.E. 848, 848–49 (S.C. 1924). In other words, ACV is the pre-loss value of the property. Thus, an insured whose 20-year-old roof is damaged would be entitled to an ACV payment for the cost of a new roof, less 20 years' worth of depreciation—the "actual" value of the roof before the loss. If an ACV payment is made, the policy allows an insured to repair damage within one year of the date of loss and "make a further claim" for the difference between the ACV payment and the actual cost of repair. (Answer, Exs. A and B, Section I – Conditions 3(b)(4)). This "further claim" allows the insured to recover any depreciation deducted from the property's replacement cost.

### B. Plaintiffs' Allegations

Plaintiff Bryson's home sustained damage due to a fire emanating from a television on her deck on June 10, 2017. (Compl. ¶ 15). Bryson made a claim, and LIC responded by providing Bryson with a valuation report that calculated the replacement cost value ("RCV") to be $10,104.11. (Compl. ¶¶ 17, 26; Compl. Ex. A, p. 1). In accordance with the terms of the policy and based on the age and condition of the items repaired, LIC calculated the depreciation to be $1,109.81. (Compl. ¶ 27). LIC deducted the depreciation from the estimated total repair cost to arrive at the ACV prior to the loss—$8,994.30. After applying the $1,000.00 deductible, LIC paid Bryson $7,994.30. (Compl. ¶¶ 27; Compl. Ex. A, p. 7).

The estimate that Bryson received from LIC makes clear that, if Bryson had repaired or replaced the damaged property, she could have recovered all the depreciation deducted and explains how to do so. (Compl. Ex. A, p. 1.) Bryson does not assert that she made a claim for repairs or replacement for which she did not receive RCV.

Plaintiff Gibson's home sustained damage due to a fire caused by her grandson playing with a lighter near her bed on May 26, 2017. (Compl. ¶ 36). Gibson made a claim, and LM responded by providing Gibson with a valuation report estimating the replacement cost value ("RCV") to be $58,123.17. (Compl. ¶¶ 38, 47; Compl. Ex. B, p. 26). In accordance with the terms of the policy and based on the age and condition of the items repaired, LM calculated the depreciation to be $15,817.77. (Compl. ¶ 48). LM deducted the depreciation from the estimated total repair cost to arrive at the ACV prior to the loss—$42,305.40. After applying the $1,000.00 deductible, it paid Gibson $41,305.40. (Compl. ¶¶ 48; Compl. Ex. B, p. 26).

The estimate that Gibson received from LM makes clear that, if Gibson had repaired or replaced the damaged property, she could have recovered all the depreciation deducted and explains how to do so. (Compl. Ex. B, p. 1.) Gibson does not assert that she made a claim for repairs or replacement for which she did not receive RCV.

## III.  <u>STANDARD OF REVIEW</u>

Rule 12(c) provides that "[a]fter the pleadings are closed–but early enough not to delay trial–a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "The purpose of a motion for judgment on the pleadings is to test the sufficiency of the complaint." *Kutsmeda v. Tr. One Mortg. Corp.*, No. CIV.A. 305CV518JRS, 2005 U.S. Dist. LEXIS 32624, at *4 (E.D. Va. Dec. 9, 2005). "A motion for judgment on the pleadings is determined by the same standard applied to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)."

*Id.* It will "operate to dispose of claims where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noted facts." *Escalante v. Anderson Cty. Sheriff's Dep't*, No. CV 8:15-177-MGL, 2015 U.S. Dist. LEXIS 152718, at *5 (D.S.C. Oct. 23, 2015).

"When considering a motion for judgment on the pleadings, the court may consider the pleadings, exhibits attached thereto, documents referred to in the complaint that are central to the plaintiff's claims, and other materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice." *Id.* (citing *In re MI Windows & Doors, Inc. Prods. Liab. Litig.*, MDL No. 2333, Nos. 2:12–mn–00001, 2:12–cv–02269–DCN, 2013 U.S. Dist. LEXIS 87960, at *6 (D.S.C. June 24, 2013)). While the Court must accept well-pleaded allegations in a light most favorable to the plaintiffs, it "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

## IV.    ARGUMENT

### A.    Plaintiffs' Insurance Policies Require Depreciation of *All* Costs to Repair or Replace To Calculate ACV

#### 1.    *Courts Must Enforce Clear and Unambiguous Terms of Insurance Policies.*

"[T]he judicial function of a court of law is to enforce contracts as made by the parties and not to re-write or distort, under the guise of judicial construction, the terms of an unambiguous contract." *Dobyns v. S.C. Dep't of Parks, Recreation and Tourism*, 480 S.E.2d 81, 84 (S.C. 1997) (citation omitted). Thus, the courts "are without authority to alter a contract by construction or to make a new contract for the parties. Their duty is limited to interpretation of

the contract made by the parties themselves . . . regardless of its wisdom or folly, apparent unreasonableness, or failure to guard their rights carefully." *First Am. Title Ins. Co. v. Columbia Harbison LLC*, No. 3:12-CV-00800-JFA, 2013 U.S. Dist. LEXIS 52325, at *20 (D.S.C. Apr. 11, 2013) (quoting *Gilstrap v. Culpepper*, 320 S.E.2d 445, 447 (S.C. 1984) (citations omitted)).

Courts must interpret insurance policies under the same rules of interpretation as other contracts. *Fender v. New York Life Ins. Co.*, 155 S.E. 577, 583 (S.C. 1930). "If the contract's language is clear and unambiguous, the language alone determines the contract's force and effect." *Schulmeyer v. State Farm Fire & Cas. Co.*, 579 S.E.2d 132, 134 (S.C. 2003). The court must give terms their "plain, ordinary, and popular" meanings. *Id.* "The meaning of a particular word or phrase is not determined by considering the word or phrase by itself, but by reading the policy as a whole and considering the context and subject matter of the insurance contract." *Id.* In addition, "the court must consider the entire contract between the parties to determine the meaning of its provisions, and that construction will be adopted which will give effect to the whole instrument and each of its various parts, so long as it is reasonable to do so." *MGC Mgmt. of Charleston, Inc. v. Kinghorn Ins. Agency*, 520 S.E.2d 820, 823 (S.C. Ct. App. 1999).

Here, Plaintiffs' insurance policies present an insuperable bar to relief. The policies state that Defendants would pay actual cash value at the time of the loss. (Answer, Exs. A and B, Section I – Conditions, Parts 3(b)(1), (2), (4). ACV means replacement cost less depreciation, which is exactly what Plaintiffs got. *See* S.C. Department of Insurance ("DOI") Bulletin No. 2014-08. As a result, Defendants are entitled to judgment on the pleadings, and Plaintiffs' claims must be dismissed with prejudice.

## 2. *Plaintiffs' Breach of Contract Claim Fails As a Matter of Law.*

Plaintiffs' breach of contract claim fails as a matter of law. Their interpretation of "actual cash value"—that it permits the depreciation of materials only—has no basis in the policies themselves and is at odds with South Carolina law and regulations and fundamental principles of indemnity and depreciation.

### a. *The Policies' Language Permits Subtraction of Labor Costs from Actual Cash Value.*

Plaintiffs' policies clearly state that Defendants will pay ACV until Plaintiffs repair or replace the damaged property. (Answer, Exs. A and B, Section I – Conditions, Part 3(b)(4)) ("We will pay no more than the actual cash value of the damage until actual repair or replacement is complete."). In settling Plaintiffs' claims for ACV, the policies allowed Defendants to deduct for depreciation. Upon repair or replacement, Plaintiffs could have submitted further claims for the replacement costs they incurred that exceeded their ACV payments. (Answer, Exs. A and B, Section I – Conditions, Part 3(b)(3)). But Plaintiffs do not assert they made a claim for replacement costs for which they were not made whole.

Defendants therefore honored the policy terms by issuing Plaintiffs only ACV payments, as reduced by their deductibles. (Compl. ¶¶ 19, 40). Indeed, the plain terms of the policies disallowed replacement cost coverage until Plaintiffs repaired or replaced the property. (Answer, Exs. A and B, Section I – Conditions, Part 3(b)(4)). By demanding certain replacement costs before actual replacement or repair, Plaintiffs seek what their policies prohibit. *See Copley v. State Auto. Mut. Ins. Co.*, 943 F.2d 48 (4th Cir. 1991) (affirming that replacement costs were only payable upon repair or replacement of home based on clear policy language).

That Defendants did not define actual cash value in the policies changes nothing. *See Bardsley v. Gov't Employees Ins. Co.*, 747 S.E.2d 436, 440 (S.C. 2013) ("It is a well-settled

principle of contract interpretation that absent a contractual definition to the contrary, contract language is given its ordinary and plain meaning."); *Morris v. Auto-Owners Ins. Co.*, No. 3:16-CV-00880-JMC, 2016 U.S. Dist. LEXIS 179715, at *11-12 (D.S.C. Dec. 29, 2016) (giving "flood" its ordinary meaning). South Carolina courts look to prior case law or dictionaries to discover the plain, ordinary, and popular meaning of a term. *Mize v. Travelers Cas. Co. of Connecticut*, No. 4:09-CV-0076-TLW-TER, 2011 U.S. Dist. LEXIS 26129, at *13 (D.S.C. Mar. 10, 2011).

The definition of "actual cash value" as replacement-cost-less-depreciation controls even if the insurance policy does not specifically define the term. *See Harrison*, 120 S.E. at 848–49 (describing that the policy provided only for "actual cash value of the property at the time of the loss and that the loss should be ascertained according to such cash value with proper reduction for depreciation *however caused*.") (emphasis added). The Supreme Court of South Carolina explained the difference between ACV and RCV in this way:

> It is commonly referred to as replacement cost insurance, and previously called *depreciation* insurance. If one is paid actual cash value for the destruction of a building which is, by reason of depreciation, worth only one-half of its replacement cost, the insured is in no financial condition to replace the building. Replacement cost insurance was devised to provide money for reconstruction. In effect, the insurer, under this plan, agrees to pay not only actual value but also the difference between actual cash value and full replacement cost.

*Columbia Coll. v. Pennsylvania Ins. Co.*, 157 S.E.2d 416, 423 (S.C. 1967) (emphasis added). That court also said, "the very nature of replacement cost insurance involves a fluctuating figure and can never be determined until after the loss has actually occurred and replacement cost figures procured." *Id.* at 424. Further, the court explained that replacement cost is an "increased benefit to bridge the gap between the value of a used building and the cost of replacing the same." *Id.* at 425.

South Carolina courts endorse the concept of subtracting the cost of labor from the value of insured property because all costs—not just the costs of materials—depreciate over time. For example, in *Am. Res. Ins. Co. v. Palmer*, the court assessed the ACV payment to which the plaintiffs were entitled for damage to a gas station. No. CIV.A. 4:08-03314, 2010 U.S. Dist. LEXIS 85613, at *6-8 (D.S.C. Aug. 19, 2010). The court subtracted $1,000.00 in labor costs associated with installation of a new gas pump console because, "labor cost would only be awarded on a replacement cost basis." *Id.* at *24-25. More specifically, the policy instructed that the insurer-plaintiff "will not pay on a replacement cost basis for any loss or damage . . . [u]ntil the lost or damaged property is actually repaired or replaced." *Id.* at 25. The insureds admitted they had not replaced anything in the building. As a result, the policy prohibited them from receiving the full cost of labor involved in repairing or replacing the property. *Id.* The same is true for Plaintiffs here.

In addition, South Carolina's Department of Insurance ("DOI") reflects the above-mentioned definition of ACV, "the amount needed to repair or replace the damage minus a deduction for depreciation." S.C. DOI Bulletin 2014-08. The DOI's guidance for consumers explains the difference between RCV and ACV in plain and easy-to-understand terms:

> You have the option to choose to insure your home and belongings for either replacement cost or actual cash value. Replacement cost is the amount it would take to replace or rebuild your home or repair damages with materials of similar kind and quality, without deducting for depreciation. It is important to insure your home for at least 80% of its replacement value. Actual cash value is the amount it would take to repair or replace damage to your home after depreciation.

*See* "Purchasing Home Insurance Knowledge," *available at* https://www.doi.sc.gov/618/Purchasing-Home-Insurance-Knowledge (last visited June 12, 2020).

And the DOI's definition of "actual cash value" mirrors the common understanding of the term—Black's Law Dictionary defines it as "replacement cost minus normal depreciation." (Black's Law Dictionary (11th ed. 2019). Moreover, the Insurance Institute of America has stated that depreciating materials alone "makes little sense." Ins. Institute of Am., *Property Loss Adjusting* 226 (James J. Markham, ed. 1990). Because an object derives value from both the material and labor that went into it, as the object loses value, both materials and labor "should be depreciated." *Id.* Plaintiffs were entitled under their policies to ACV only, and Defendants lawfully and accurately calculated Plaintiffs' ACV payments according to South Carolina law. Finding that the phrase "depreciation" does not include depreciation of the costs of labor, as Plaintiffs interpret it, would improperly add to the regulation and guidance words that simply are not there, making it "depreciation other than labor." *See First Am. Title Ins. Co.*, 2013 U.S. Dist. LEXIS 52325, at *20. Therefore, the Court must reject Plaintiffs' argument.

> **b.** **Property Appraisal and Accounting Standards Also Recognize That Labor Costs Should Be Depreciated to Determine Property's Value.**

In South Carolina and elsewhere, property appraisal, tax, and accounting standards recognize that labor costs must be subtracted from the cost to repair or replace to arrive at actual cash value. Consequently, the weight of the authority is against Plaintiffs' interpretation of ACV.

For instance, in a negligent tort case, a court held that not depreciating the cost of labor would place the plaintiff in "the favored position of having the useful life of such portion of its bridge doubled" but "without any cost to it." *Seaboard Air Line R. Co. v. Marine Indus., Inc.*, 237 F. Supp. 10, 14 (E.D.S.C. 1964). The court reasoned, "Equity and fairness should require libelant to pay for one-half of the total repair cost to such damaged portion of its bridge, if its

useful life is doubled as a result of the repairs. Otherwise, libelant will be making a profit as a result of the accident, at the unjust expense of respondent." *Id.*

In an admiralty case, the Eastern District of South Carolina found it would be "unjust" to "limit depreciation to material cost alone." *Oakdene Compress & Warehouse Co. v. S. S. Cities Serv. Norfolk*, 242 F. Supp. 148, 151 (E.D.S.C. 1965). It explained that the repairs to the wharf extended its life, and that this extension "was purchased at a certain cost for materials and a certain cost for labor." *Id.* The plaintiff was "entitled to be restored as nearly as possible to its position preceding the accident, but no more. Its position has actually been improved and [defendant] is entitled to credit for such improvement." *Id.*

In tax cases, the "depreciated reproduction cost" of improvements is used to value property. *Re: Property Tax*, 1986 S.C. Tax LEXIS 87, *6 (S.C. Tax Comm. Sept. 5, 1986); *see also Re: Property Tax*, 1986 S.C. Tax LEXIS 32, at *5 (S.C. Tax Comm. Feb. 26, 1985) ("It is important to note that in estimating the depreciation rate for the grounds and improvements, adequate consideration should be given for all functional and economic obsolescence."); *Nash v. Montgomery Cnty. Bd. of Rev. and Montgomery Cnty. Auditor*, 2008 WL 3999505, at *4.

Federal tax law also permits depreciating labor costs when valuing property. Specifically, the depreciation statute, 26 U.S.C. § 167(c)(l), directs taxpayers to calculate depreciation on the entire basis of property, which is "the cost of such property." 26 U.S.C. §§ 1011(a), 1012(a). Of course, materials, labor, and overhead are all included in "the cost of property." Moreover, IRS publications make clear that a property's depreciable basis includes labor costs. *See* IRS Publication No. 551, Cat. No. 15094C (Dec. 2014) ("If you build property or have assets built for you, your expenses for this construction are part of your basis. Some of these expenses include . . . Labor and materials.").

Moreover, accounting/GAAP principles dictate that the cost of labor should be depreciated, just as the costs of materials are depreciated. *See* Whitley B. Forehand & Paul G. Alford, *Financial Reporting for Construction Controllers*, 1999 WL 35639229.

Taken together, South Carolina's case law, insurance and tax regulations, appraisal standards, and accounting principles all establish that depreciation is properly applied to *all* components of cost, not merely the "material" component. Consequently, Defendants properly depreciated the full cost to repair Plaintiffs' property, including labor.[1]

### c. Plaintiffs' Attempt to Redefine ACV as Partial Replacement Cost Is Contrary to Principles of Indemnity and Foreclosed by South Carolina Law.

Under South Carolina law, "insurance" means "a contract where one undertakes to *indemnify* another or pay a specified amount upon determinable contingencies." S.C. Code § 38-1-20(25). The "very nature of indemnity . . . is to make the party whole." *Fountain v. Fred's, Inc.*, 839 S.E.2d 475, 489 (S.C. Ct. App. 2020). In *Fountain*, the court held that fees incurred to establish the right to indemnity should be borne by the party seeking indemnity. *Id.*

Here, Plaintiffs seek the full cost of labor for repairs that they have *not* incurred, which is contrary to the principles of indemnity. *See id.* If the court grants them those costs, they will receive a windfall. Until Plaintiffs repair/replace, they have not suffered a loss of that labor, but, instead, only the loss of the depreciated value of the original labor and materials that went into

---

[1] Moreover, Plaintiffs ask the Court to read the word "materials" into the policy before the word depreciation. But that is impermissible under South Carolina law. *See Schulmeyer v. State Farm Fire & Cas. Co.*, 579 S.E.2d 132, 135 (S.C. 2003) ("To read value into the repair clause would arbitrarily read out of the policy the insurer's right to determine whether to repair the vehicle or to pay for its loss."); *Ferira v. State Farm Fire & Cas. Co.*, 798 F. App'x 772, 773 (4th Cir. 2020) ("No statements regarding the terms of [the policy] may be used to vary [its] otherwise clear meaning.") (determining policy's plain language prevented plaintiff from recovering for damage to her roof); *First Am. Title Ins. Co. v. Columbia Harbison LLC*, No. 3:12-CV-00800-JFA, 2013 U.S. Dist. LEXIS 52325, at *18-20 (D.S.C. Apr. 11, 2013.

the damaged/destroyed item. Several courts have explained the purpose of requiring repair or replacement before awarding associated costs: "Replacement and repair costs are to some degree within the control of the insured. They can be minimized by careful purchasing, inspection of material, quality control and hiring policies." *OneBeacon Ins. Co. v. Metro Ready-Mix, Inc.*, 242 F. App'x 936, 941 (4th Cir. 2007). By paying only ACV until the insured repairs or replaces the property, insurers like Defendants avoid moral hazard—the risk that insureds will intentionally damage property to receive a windfall. *See Whaley v. Guardian Fire Ins. Co.*, 117 S.E. 209, 211 (S.C. 1923) (condition tended to prevent motive for "fraudulent destruction of the property by the insured"); *Shealey v. Am. Health Ins. Corp.*, 66 S.E.2d 461, 463 (S.C. 1951) ("Evidently, the provision was designed to protect the insurer against the moral hazard of over-insurance brought about by the insured, or by another for his benefit and with his knowledge and consent.").

In fact, the Fourth Circuit specifically warned that, "Using replacement cost in inappropriate circumstances may incentivize victims to inflate their losses by replacing older, depreciated property with newer, more expensive property." *United States v. Steele*, 897 F.3d 606, 612 (4th Cir. 2018). Windfalls cause "premiums to increase exponentially for all" and restrict the affordability of insurance policies. *Weaver v. AEGON USA, LLC*, No. 4:14-CV-03436-RBH, 2015 U.S. Dist. LEXIS 130026, at *16 n.11 (D.S.C. Sept. 28, 2015), *modified*, No. 4:14-CV-03436-RBH, 2016 U.S. Dist. LEXIS 51952 (D.S.C. Apr. 19, 2016). In 2018, homeowners' insurers in South Carolina paid out $723,100,000 in claims. *See Incurred Losses by State*, Insurance Information Institute, *available at* https://www.iii.org/publications/a-firm-foundation-how-insurance-supports-the-economy/a-50-state-commitment/incurred-losses-by-state. South Carolina has the 17th highest home insurance premium. *See Facts + Statistics:*

*Homeowners and Renters Insurance*, Insurance Information Institute, *available at* https://www.iii.org/fact-statistic/facts-statistics-homeowners-and-renters-insurance.

If the Court accepts Plaintiffs' approach, it will doom insureds to paying higher premiums for their insurance policies. If the Court accepts Defendants' approach, it will avoid this problem while still allowing insureds to recover the full cost of labor by repairing or replacing their property, as spelled out in the policies.

> **d.      The Substantial Weight of Authority from Other Jurisdictions Indicates Labor Cost Should Be Excluded from ACV Payments.**

Because the policies' language is not reasonably susceptible to Plaintiffs' interpretation on its own terms and under South Carolina law, Plaintiffs turn to cases and regulatory guidance from other jurisdictions in the hopes of manufacturing ambiguity where none exists. (Compl. ¶¶ 53, 60-62). While different judicial and administrative interpretations might be *some* evidence of ambiguity, they are not dispositive, particularly where Plaintiffs' construction of the language is unreasonable. *See Arsenault v. Commercial Union Ins. Co.*, 153 F.3d 718, 1998 U.S. App. LEXIS 16745, *4 (4th Cir. 1998) (table) ("Like the district court, we conclude that the contract is not susceptible to two reasonable interpretations."); *Evanston Ins. Co. v. R & L Dev. Corp., LLC*, No. CIV.A. 5:12-02750, 2014 U.S. Dist. LEXIS 172615, at *9 (D.S.C. Dec. 15, 2014) ("[T]he court finds that the Evanston Policy is not susceptible to more than one reasonable interpretation."); *Gen. Info. Servs., Inc. v. LP Software, Inc.*, No. C.A.3:08-324-CMC, 2009 U.S. Dist. LEXIS 53516, at *21 (D.S.C. June 18, 2009) ("The On Going Costs section is susceptible to only one reasonable interpretation . . . To hold otherwise, the court would be required to rewrite the terms of the contract."). In any event, cases and regulatory sources from other states involving other policies do not make these policies' language ambiguous under South Carolina

law. *See S.C. Farm Bureau Mut. Ins. Co. v. Kelly*, 547 S.E.2d 871, 875 n.4 (S.C. Ct. App. 2001) (distinguishing case with different policy language).

The majority approach is to permit labor cost depreciation in calculating actual cash value in insurance policies. The Oklahoma Supreme Court held the standard meaning of actual cash value and principles of indemnity were consistent with State Farm's depreciation of total replacement cost, including labor. *Redcorn v. State Farm Fire & Cas. Co.*, 55 P.3d 1017, 1021 (Okla. 2002). In addition, the supreme courts of Nebraska and Minnesota have both unanimously agreed that depreciation can be applied to labor replacement costs. *Henn v. Am. Family Mut. Ins. Co.*, 894 N.W.2d 179, 189 (Neb. 2017); *Wilcox v. State Farm Fire & Cas. Co.*, 874 N.W.2d 780, 784–85 (Minn. 2016).

Most federal appellate courts, when called on to predict how certain states would resolve the issue, have agreed. First, in *Graves v. American Family Mutual Insurance Co.*, 686 F. App'x 536 (10th Cir. 2017), the Tenth Circuit, applying Kansas law, unanimously held that depreciation could be applied to all replacement costs, including labor. Because nothing in the policy language suggested that an insurer would "dissect depreciation into separate components of material and labor costs in the first instance," a "reasonably prudent insured would not expect the insurer to apply such an unorthodox depreciation method [i.e., depreciating some replacement costs but not others] when determining actual cash value." *Id.* The Eighth Circuit reached a similar result in *In re State Farm Fire Cas. Co. (LaBrier)*, 872 F.3d 567, 575-76 (8th Cir. 2017). In that case, applying Missouri law, the court reversed a lower court's decision that adopted an argument similar to Plaintiffs', because "the district court ignored what State Farm was estimating—the depreciated value of the damaged property *at the time of loss*." *Id.* at 576.

Numerous district/trial courts have agreed. These decisions have generally recognized, as discussed above, that insurers use present-day replacement cost to estimate the value of the property in new condition. Only by applying depreciation to the total replacement cost can an insurer accurately estimate the value of the property in depreciated condition. *See, e.g.*, *Ware v. Metro. Prop. & Cas. Ins. Co.*, 220 F. Supp. 3d 1288, 1289–91 (M.D. Ala. 2016); *Papurello v. State Farm Fire & Cas. Co.*, 144 F. Supp. 3d 746, 768–71 (W.D. Pa. 2015); *Riggins v. Am. Family Mut. Ins. Co.*, 281 F. Supp. 3d 785, 789 (W.D. Mo. 2017); *Basham v. United Servs. Auto. Ass'n*, No. 16-cv-03057-RBJ, 2017 U.S. Dist. LEXIS 118729, *9 (D. Colo. July 28, 2017); *Accardi v. Hartford*, 373 N.C. 292, 295 (N.C. Feb. 28, 2020) (certified question of law that ended litigation).[2]

One court explained the concept this way:

> Suppose that a person wants to buy a grand piano. The piano materials themselves—wood, metal, and the like—may have a value of only $500. But building a piano requires great skill and hours of labor. Because of this labor, the value of the finished piano is $5000. The labor has increased the price of the finished good, and it has merged into part of a completed product. And as this finished good-the piano-depreciates in value, the value of the labor that went into building it depreciates as well.

*Brown v. Travelers Cas. Ins. Co.*, No. 15-50-ART, 2016 U.S. Dist. LEXIS 55037, at *9 (E.D. Ky. Apr. 25, 2016). The South Carolina Supreme Court, Defendants submit, would follow this sound logic and the approach of the well-reasoned majority decisions. Consequently, this Court should endorse the majority approach in this case.

To be sure, arguments like Plaintiffs' have persuaded some courts. Those decisions are not persuasive because they fail to understand why an insurer must apply depreciation to total

---

[2] South Carolina courts frequently look to the decisions of the Supreme Court of North Carolina where South Carolina law is unsettled. *See, e.g.*, *Hook v. Rothstein*, 316 S.E.2d 690, 698 (S.C. Ct. App. 1984).

replacement cost to accurately measure a property's actual cash value at the time of loss. *See, e.g., Adams v. Cameron Mutual Insurance Co.*, 430 S.W.3d 675, 677–79 (Ark. 2013). The Arkansas legislature responded to *Adams* by enacting legislation to overrule it. Ark. Stat. § 23-88-106.17. The Tennessee Supreme Court recently agreed with the *Adams* court. *Lammert v. Auto- Owners (Mut.) Ins. Co.*, 572 S.W.3d 170, 179 (Tenn. 2019).

One federal appellate court has also agreed, with the Sixth Circuit in *Hicks v. State Farm Fire & Cas. Co.* predicting (over a dissent) that Kentucky courts would adopt Plaintiffs' minority approach. 751 F. App'x 703, 710 (6th Cir. 2018). That court also determined Ohio would follow the minority approach in *Perry v. Allstate Indem. Co.*, 953 F.3d 417, 423 (6th Cir. 2020), despite conflicting Ohio Common Pleas Court decisions on the issue.

None of these decisions provide any reason why this Court should not follow the LIC and LM policies' express language, established South Carolina law, and common sense. Decisions by other courts do not control the issue, but, in any event, the better reasoned decisions support Defendants' arguments. Plaintiffs' theory is nonsensical—a dilapidated house is not "worth" the cost to rebuild it.

These sources from other jurisdictions fail to create any ambiguity. The only reasonable interpretation of Plaintiffs' policies' language is that depreciation should apply to total replacement cost, because that is the only way the replacement cost less depreciation method can accurately estimate a property's actual cash value. Plaintiffs' contrary interpretation of the language is simply unreasonable and should be rejected. *See Arsenault*, 153 F.3d 718, at *2; *Evanston Ins. Co*, 2014 U.S. Dist. LEXIS 172615, at *9; *Gen. Info. Servs., Inc*, 2009 U.S. Dist. LEXIS 53516, at *21.

> **e.     *The Complaint's Citation to a Supreme Court Case Is a Red Herring.***

Plaintiffs cite *South Carolina Electric & Gas Co. v. Aetna Ins. Co.*, 120 S.E.2d 111, 118 (S.C. 1961), as authority that, "The traditional industry practice to only depreciate materials and not labor when determining the ACV of a structural property loss was recognized by the South Carolina Supreme Court several decades ago." (Compl. ¶ 54). In *Aetna*, the court addressed whether fire damage to machinery was within coverage of relevant policies and whether the question to the jury incorrectly stated the measure of maximum recovery under the policy. *Id.* at 259. The court upheld the jury verdict, which only applied depreciation to the materials. *Id.* at 261. However, whether it was permissible to depreciate labor was not at issue.

*Aetna* cited a case from the Pennsylvania Supreme Court, *Fedas Ins. Co. of State of Pennsylvania*, 151 A. 285, 288 (Penn. 1930). In *Fedas*, the court interpreted the term "ACV" in policies setting forth single-step payment procedures, under which the insurer agreed to make only *one payment* of ACC—not an initial ACV at the time of the loss payment followed by an additional payment for full replacement cost. 151 A. at 287; *see also Papuerllo v. State Farm Fire & Cas. Co.*, 144 F.Supp.3d 746, 765 (W.D. Penn. 2015) (comparing ACV payments in single-step payment policies in *Fedas* to two-step replacement cost payment processes). "[W]here a property insurer promises the insured only one payment of 'actual cash value,' the insured is entitled to full replacement cost without any deduction for depreciation." *Papuerllo*, 144 F. Supp. 3d at 764-65 ([a]ctual cash value' means . . . the real value to replace"). But in a two-step claim payment process, like Defendants', "[t]he Policy's first step does not promise the insured payment of the market value of whatever labor may be required to repair or replace that 'property,'. . . Plaintiffs are, in any event, eligible to be 'made whole' with reimbursements for full replacement costs at step two, which include reimbursements for labor costs." *Id.* at 771 n13.

19

Therefore, Plaintiffs' citation to *Aetna* does not support their argument. *Aetna* did not address whether labor depreciation was permissible. Further, it relied on a case involving a single-step claim procedure, but the LIC and LM policies provide a two-step procedure where Plaintiffs could actually recover full replacement costs. In addition, the case cited by *Aetna* stated that no depreciation was appropriate in the single-step procedure, not the two-step claim procedure at issue here. Since *Aetna* has no bearing on this case, the Court should reject Plaintiffs' bald assertion that South Carolina law prohibits depreciation of labor under the applicable policies.

### f. The Court Should Reject Plaintiffs' Other "Smokescreen" Arguments.

Defendants anticipate Plaintiffs will bring several "smokescreen" arguments in their response in opposition to this motion to divert the Court's attention away from the real issue—whether Bryson's and Gibson's policies foreclose depreciation of labor costs from ACV payments. For instance, Plaintiffs discussed the history of calculating depreciation in their Complaint. (Compl. ¶¶ 53-66). None of these arguments have merit.

First, Plaintiffs cite a couple secondary sources indicating that "many years ago," labor was not depreciated in the insurance industry. (Compl. ¶ 53). It is clear those sources have an "agenda," and they do not accurately represent the history of depreciation calculations. "[L]abor and material costs have historically been included in the calculations of depreciation." James J. Adrian, *New Challenges to Depreciation: Is the Labor Cost Depreciable?*, 2017 WL 1232841 (May/June 2017). There is evidence of insurance companies depreciating labor at least as far back as 74 years ago. *See, e.g.*, *Wells v. Missouri Prop. Ins. Placement Facility*, 653 S.W.2d 207, 212 (Mo. 1983).

Second, Plaintiffs cite a study by the National Association of Insurance Commissioners concerning labor depreciation practices. (Compl. ¶¶ 60-63). While Plaintiffs claim "there were no consistent positions" on depreciation of labor, the approach of a majority of the states that have addressed this issue is to permit it, as shown above.

### g. *Plaintiffs Fail to Identify a Single Provision of Their Insurance Policies That Defendants Breached.*

Moreover, Plaintiffs' breach of contract claim fails because they cite no policy provision Defendants breached. They cite nothing requiring payment of labor costs or preventing the depreciation of labor costs from actual cash value. Consequently, the Court must grant Defendants judgment on the pleadings with respect to Plaintiffs' breach of contract claim.

To support a breach of contract claim, "Plaintiffs must allege some specific contract provision that was allegedly breached." *Morris v. Ocwen Loan Servicing, LLC*, No. 0:16-CV-01772-JMC, 2017 U.S. Dist. LEXIS 38648, at *16 (D.S.C. Mar. 17, 2017) (internal quotation mark omitted) (dismissing breach of contract claim). A "conclusory allegation that a breach of contract has occurred" is insufficient. *Sharpe v. Household Fin. Corp. II*, No. 8:09-CV-02784, 2010 U.S. Dist. LEXIS 105235, at *6-7 (D.S.C. Sept. 30, 2010) (finding there was "no express contractual obligation for [the company] to refrain from reporting the cancellation of debt income to the Internal Revenue Service," as alleged by plaintiff); *see also Randall v. Tierney*, No. CV 1:16-255-JMC-SVH, 2016 U.S. Dist. LEXIS 100909, at *6 (D.S.C. Apr. 18, 2016), *report and recommendation adopted*, No. 1:16-CV-00255-JMC, 2016 U.S. Dist. LEXIS 100909 (D.S.C. Aug. 2, 2016) (plaintiff was unable to dispute insurance contract gave insurance company the right to settle or defend as it deemed appropriate).

Here, Plaintiffs fail to cite any provision referring to the costs of labor or the concept of labor depreciation. Rather, they allege in a conclusory fashion that actual cash value includes

payment for undepreciated labor costs without any contractual support. (Compl. ¶ 51). On this basis alone, the Court must grant judgment on the pleadings to Defendants with respect to Count I.

### 2. *The Declaratory Judgment Claim Fails with the Breach of Contract Claim.*

The Court has discretion concerning whether to grant or deny a request for a declaratory judgment. 28 U.S.C. § 2201(a). Here, the Court should exercise its discretion to deny Plaintiffs' request for declaratory relief.

"The Declaratory Judgment Act is not one which adds to the jurisdiction of the court, but is a procedural statute which provides an additional remedy for use in those cases and controversies of which the federal courts already have jurisdiction." *Championship Tournaments, LLC v. United States Youth Soccer Ass'n, Inc.*, No. CV SAG-18-2580, 2019 U.S. Dist. LEXIS 216980, at *4 (D. Md. Dec. 18, 2019) (internal quotation mark omitted). "When declaratory relief would be duplicative of claims already alleged, dismissal is warranted." *Bhambhani v. Innovative Health Sols., Inc.*, No. CV RDB-19-0355, 2020 U.S. Dist. LEXIS 23515, at *25 (D. Md. Feb. 11, 2020); *Elior, Inc. v. CAG Food Servs., LLC*, No. 3:19CV45, 2019 U.S. Dist. LEXIS 124206, at *5 (W.D.N.C. July 25, 2019). In other words, courts frequently dismiss declaratory relief claims that raise the same issue as the substantive legal claim already before the court. *See, e.g.*, *Cohan v. Pella Corp.*, No. 2:14-MN-00001-DCN, 2015 U.S. Dist. LEXIS 144794, at *44 (D.S.C. Oct. 26, 2015).

Here, Plaintiffs seek "a declaration that Defendants' property insurance contracts prohibit the withholding of labor costs as depreciation when adjusting partial losses under the methodology employed here." (Compl. ¶ 116). This is clearly duplicative of the breach of contract claim, in which Plaintiffs seek a judgment that Defendants "breached their contractual

duty to pay Plaintiffs and members of the proposed class the ACV of their claims by unlawfully withholding labor and other non-materials as depreciation." (Compl. ¶ 107). *See Bhambhani*, 2020 U.S. Dist. LEXIS 23515, at \*25. Because a declaratory judgment would "serve[] no useful purpose [because] it seeks only to adjudicate an already-existing breach of contract claim," the Court must grant Defendants judgment on the pleadings with respect to Count II. *See Elior, Inc.*, 2019 U.S. Dist. LEXIS 124206, at \*5; *see* also *Championship Tournaments, LLC*, 2019 U.S. Dist. LEXIS 216980, at \*4; *Paden v. J.P. Morgan Chase Bank, N.A.*, No. 1:11CV731, 2011 WL 13234307, at \*3 (E.D. Va. Nov. 23, 2011) ("As the breach-of-contract claim fails, so too does the declaratory-judgment claim, which must therefore be dismissed.").

### C.      In the Alternative, Defendants Request Certification to the Supreme Court of South Carolina Because the Central Issue Is Dispositive and There Is No Controlling Precedent in the Decisions of the State Supreme Court.

Rule 244 of the South Carolina Judicial Department Court Rules provides:

The Supreme Court in its discretion may answer questions of law certified to it by any federal court of the United States or the highest appellate court or an intermediate appellate court of any other state, when requested by the certifying court if there are involved in any proceeding before that court questions of law of this state which may be determinative of the cause then pending in the certifying court when it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court.

"The Fourth Circuit Court of Appeals has held that state courts have a strong interest in resolving unsettled issues of state law." *Builders Mut. Ins. Co. v. Burton Co.*, No. 2:06-2608-CWH, 2007 U.S. Dist. LEXIS 57523, at \*7 (D.S.C. Aug. 7, 2007) (citing *Nautilus Insurance Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 378 (4th Cir. 1994)).

"[T]he lack of precedent as well as the need to avoid potential inconsistency" justify certification. *Chenard v. Hilton Head Island Dev. Co., LLC*, No. 9:14-CV-3347, 2016 U.S. Dist. LEXIS 197495, at \*7 (D.S.C. Aug. 24, 2016); *see also Mendenall v. Anderson Hardwood*

*Floors, LLC*, No. 2:11-CV-01291-DCN, 2012 U.S. Dist. LEXIS 44738, at *7 (D.S.C. Mar. 30, 2012) (certifying question based on "lack of controlling precedent").

The requirements for certification are met here. Thus, if the Court determines it cannot grant Defendants' motion for judgment on the pleadings, it should certify the central legal issue in the case to the state supreme court.

### 1. *Resolution of the Question May Be Determinative of the Action.*

The Supreme Court of South Carolina allows for certification of a question to it by a federal court upon a finding that there is a question of law "determinative of the cause" for which "there is no controlling precedent in the decisions of the Supreme Court." S.C. JDCR 244. The first requirement for certification—that resolution of the question proposed for review by the South Carolina Supreme Court may be determinative of the action before the Court—is satisfied.

As outlined above, the Complaint alleges claims against Defendants for breach of the insurance policies and related declaratory judgments. (Compl. ¶¶ 101-118). Plaintiffs' theory is that Defendants supposedly acted improperly by applying depreciation to the labor components of replacement cost when calculating actual cash value under the insurance policies. (Compl. ¶¶ 110, 116). That claim cannot succeed if South Carolina law, through South Carolina DOI Bulletin No. 2014-08 or common law, permits insurers to depreciate the total replacement cost, including both the labor and material components, when the insurer calculates and pays ACV for a loss. That is the question that Defendants seek to certify to the Supreme Court of South Carolina—resolution of which may be determinative of the merits of this action. *See Mendenall*, 2012 U.S. Dist. LEXIS 44738, at *7.

### 2. *There Is No Controlling Precedent in the Supreme Court of South Carolina.*

As outlined above in section IV.A.2.e, the Supreme Court of South Carolina has not directly addressed the proposed certified question of whether DOI Bulletin No. 2014-08 or common law permit insurers to depreciate the total cost of replacement when calculating ACV. The insurance bulletin does not indicate that labor should be excluded from the calculation of depreciation. *See* S.C. DOI Bulletin No. 2014-08.

### a. *South Carolina Cases' Emphasis on the Distinction Between ACV and RCV Indicates the Supreme Court Will Probably Rule in Defendants' Favor.*

As addressed in more detail in section IV.A.2.a above, several South Carolina cases highlight the difference between ACV and RCV, emphasizing that insureds should not receive replacement cost until they provide documentation that they repaired or replaced the structure. *OneBeacon Ins. Co. v. Metro Ready-Mix, Inc.*, 242 F. App'x 936, 941 (4th Cir. 2007); *United States v. Steele*, 897 F.3d 606, 612 (4th Cir. 2018). The South Carolina Supreme Court explained that replacement cost is an "increased benefit to bridge the gap between the value of a used building and the cost of replacing the same." *Columbia Coll. v. Pennsylvania Ins. Co.*, 157 S.E.2d 416, 425 (S.C. 1967). To the extent Plaintiffs suggest the dicta in *Aetna* favors their position, there is at least equally valuable case law supporting Defendants' position that both materials and labor cost depreciation is recoverable only after the completion of repairs or replacement.

In addition, federal courts in South Carolina have endorsed the concept of depreciating the cost of labor, indicating there is no controlling precedent in South Carolina. *See, e.g.*, *Am. Res. Ins. Co. v. Palmer*, No. CIV.A. 4:08-03314, 2010 U.S. Dist. LEXIS 85613, at *24-25 (D.S.C. Aug. 19, 2010) (subtracting subtracted $1,000.00 in labor costs associated with

installation of a new gas pump console because, "labor cost would only be awarded on a replacement cost basis."); *Grimes v. Young Life, Inc.*, No. CV 8:16-1410-HMH, 2017 U.S. Dist. LEXIS 218143, at *12 (D.S.C. Feb. 17, 2017) (cost of support poles was "composed of both pole cost and installation").

Thus, there is no controlling precedent in South Carolina concerning whether insurance companies may depreciate labor in calculating ACV. If a court is going to determine that South Carolina law implicitly prohibits depreciation of labor in calculating ACV, the Supreme Court of South Carolina should be the court that decides to do so—not a federal court. Because the central issue in this case may be dispositive, and no controlling precedent exists in the Supreme Court of South Carolina's decisions, the Court should certify the question to the state supreme court.

### 3.     *Other Considerations Favor Certification.*

Several other factors pertinent to the certification of an issue to the Supreme Court of South Carolina likewise favor certification in this case.

First, certification of the proposed question would promote efficiency by obtaining a definitive ruling now regarding South Carolina law in respect to actual cash value calculations and the application of depreciation. Regardless of the Supreme Court of South Carolina's determination on the question of law, resolution would benefit all parties and this Court in allowing this action to proceed more efficiently. Litigation of an asserted class action can be protracted, with each side having the opportunity to appeal from class certification rulings, delays associated with necessary class notice if a class is certified, extended pre-trial schedules to address class merits, class trial, and the likelihood of appeal from the ultimate resolution on the merits. But, if the South Carolina Supreme Court were to answer the proposed certified question, this case, and other pending cases against other carriers, would either be ended in favor of the

insurers or, at least, the issues would be narrowed and the cases resolved far more quickly. As the United States Supreme Court said, certifying a question to a state supreme court can "save time, energy and resources and help[] build a cooperative judicial federalism." *Lehman Bros. v. Schein*, 416 U.S. 386, 390 (1974); *see also Arizonans for Official English v. Arizona*, 520 U.S. 43, 79 (1997) (noting that taking advantage of certification made available by a State may "greatly simplif[y]" an ultimate adjudication in federal court).

Second, certification is appropriate here given the significance of the question posed and the likelihood of the legal issue recurring. *Valentine v. Sugar Rock, Inc.*, 745 F.3d 729, 735 (4th Cir. 2014). The calculation of actual cash value is a structural claim adjustment practice performed daily in South Carolina by Defendants' adjusters and by other insurers. Certification of this question would allow the Supreme Court of South Carolina to conclusively decide, and provide guidance on, an issue that impacts many of South Carolina's residents, as well as insurance companies operating in South Carolina. (Compl. ¶ 66). It is common for homeowners' insurance policies to employ a two-step loss settlement approach. Like LIC and LM, other insurers appropriately depreciate both material and labor costs when calculating the amount owed for an ACV payment.

Third, as explained above, South Carolina already has high home insurance premiums. Changing the accepted meaning of actual cash value of replacement costs less depreciation by excluding labor from those costs to be depreciated would shift the burden of the resulting higher costs of losses to future policyholders through higher premiums payments. Such a change to South Carolina insurance practices and premiums, LIC and LM submit, should come only from a definitive ruling of the South Carolina Supreme Court rather than a prediction of how that court would decide the issue. And, significantly, the Supreme Court of South Carolina's prior

treatment of requests for certification indicates that court's willingness to address questions regarding insurance policy interpretation.[3]

Fourth, this Court has already certified a similar question to the Supreme Court of South Carolina as of September 26, 2020. *See Butler v. The Travelers Home and Marina Insurance Company*, Case No. 3:19-cv-02621-JMC [ECF No. 40]. (Exhibit 1).[4] In that case, the plaintiffs had policies with The Travelers Home and Marina Insurance Company and The Standard Fire Insurance Company, under which the defendants were required to pay ACV for damage to the plaintiffs' dwellings. The defendants' calculation of depreciation included the costs of labor and materials, and the term "ACV" was undefined in the policies. The plaintiffs brought two counts: one for breach of contract and one for declaratory relief. The Court certified the following question to the state supreme court:

> When a homeowner's insurance policy does not define the term "actual cash value," may an insurer depreciate the cost of labor in determining the "actual cash value" of a covered loss when the estimated cost to repair or replace the damaged property includes both materials and embedded labor components?

---

[3] *See, e.g.*, *Silva v. Allstate Prop. & Cas. Ins. Co.*, No. CV 3:17-163-RMG, 2017 U.S. Dist. LEXIS 226482, at *11 (D.S.C. Sept. 5, 2017), *certified question answered sub nom. Silva for Estate of Silva v. Allstate Prop. & Cas. Ins. Co.*, 818 S.E.2d 753 (S.C. 2018) (certifying question of whether injuries arose from the "ownership, maintenance, or use of a motor vehicle" because South Carolina law was unsettled); *Liberty Mut. Fire Ins. Co. v. J.T. Walker Indus., Inc.*, No. CIV.A. 2:08-2043-MBS, 2010 U.S. Dist. LEXIS 30690, at *19 (D.S.C. Mar. 30, 2010), *modified*, 817 F. Supp. 2d 784 (D.S.C. 2011) ("The parties agree that no South Carolina case addresses the affect, if any, of allocation upon an insured's responsibility to pay deductibles."); *Putnam v. Alea London Ltd.*, No. 2:09-CV-1740-MBS, 2011 U.S. Dist. LEXIS 12223, at *14 (D.S.C. Feb. 4, 2011) ("The Fourth Circuit then certified several questions to the South Carolina Supreme Court, all related to the scope of the policy's coverage.").

[4] "When considering a motion for judgment on the pleadings, the court may consider the pleadings, exhibits attached thereto, documents referred to in the complaint that are central to the plaintiff's claims, and other materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice." *Escalante v. Anderson Cty. Sheriff's Dep't*, No. CV 8:15-177-MGL, 2015 WL 7180918, at *3 (D.S.C. Oct. 23, 2015)

Thus, this action is tailor-made for the certification process. If the Court does not grant Defendants in this matter judgment on the pleadings, it should certify the issue of depreciation of non-material costs to the state supreme court, which might consolidate this case with the *Travelers* case.

## V. <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the Court grant them judgment on the pleadings under Fed. R. Civ. P. 12(c). In the alternative, Defendants respectfully request that, pursuant to Rule 244 of the South Carolina Judicial Department Court Rules, the Court certify the following question to the Supreme Court of South Carolina:

> Where the term "Actual Cash Value" in Defendants' homeowners' insurance policies and South Carolina Department of Insurance Bulletin Number 2014-08 states that "[a]ctual cash value is the amount needed to repair or replace the damage minus a deduction for depreciation," and "depreciation" is not qualified or limited in any way, does depreciation apply to the entire amount needed to repair or replace the damage and non-material costs?

[SIGNATURE INTENTIONALLY ON FOLLOWING PAGE]

Dated this 1st day of October, 2020.

Respectfully submitted,

*/s/ Morgan S. Templeton*
Morgan S. Templeton (Fed ID # 7187)
Wall Templeton & Haldrup, PA
145 King St., Ste 300
P.O. Box 1200
Charleston, South Carolina 29402
Telephone: (843) 329-9500
Morgan.Templeton@WallTempleton.com

and

Rodger L. Eckelberry (*pro hac vice* anticipated)
(OH Bar #0071207)
reckelberry@bakerlaw.com
Andrea C. Wiltrout (*pro hac vice* anticipated)
(OH Bar #0098288)
awiltrout@bakerlaw.com
Alexa E. Cellier (*pro hac vice* anticipated)
(OH Bar #0093373)
acellier@bakerlaw.com
BAKER & HOSTETLER LLP
200 Civic Center Drive, Suite 1200
Columbus, Ohio 43215-4138
Telephone: (614) 228-1541
Facsimile: (614) 462-2616

*Counsel for Defendants Liberty Insurance
Corporation and LM Insurance Corporation*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing was served

via ECF notification this 1st day of October, 2020 upon the following:

David E. Massey (SC Bar 3679)
Summer C. Tompkins (SC Bar 76078)
Law Offices of David E. Massey Trial Lawyers
1620 Gervais Street, Suite A
P.O. Box 7014
Columbia, SC 29202
(803)256-4824
radmassey@aol.com
summertompkins2010@gmail.com

Erik D. Peterson (KY Bar 93003) (admitted *pro hac vice*)
Mehr, Fairbanks, & Peterson Trial Lawyers, PLLC
201 West Short Street, Suite 800
Lexington, KY 40507
(859) 225-3731
edp@austinmehr.com

J. Brandon McWherter (TN Bar 21600) (admitted *pro hac vice*)
McWherter Scott Bobbitt PLLC
341 Cool Springs Blvd, Suite 230
Franklin, TN 37067
(615) 354-1144
brandon@msb.law

T. Joseph Snodgrass (MN Bar 0231071) (admitted *pro hac vice*)
Larson King LLP
30 7th Street E., Suite 800
St. Paul, MN 55101
(651) 312-6510
jsnodgrass@larsonking.com

*Attorneys for Plaintiffs*


/s/ *Morgan S. Templeton*_____
Morgan S. Templeton (Fed ID # 7187)